J-A08032-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| AMY BEERS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAWN FRICKE | : | |
| | : | |
| Appellant | : | No. 2551 EDA 2025 |

Appeal from the Judgment of Sentence Entered September 15, 2025
In the Court of Common Pleas of Monroe County
Civil Division at No(s):  005243-CV-2025

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and KING, J.

MEMORANDUM BY PANELLA, P.J.E.:                    **FILED JULY 1, 2026**

Shawn Fricke appeals from his judgment of sentence entered in the Court of Common Pleas of Monroe County for his conviction of indirect criminal contempt for violating a Protection from Abuse ("PFA") order entered on behalf of his daughter's mother and his former paramour, Amy Beers. He argues that his conduct was not prohibited by the PFA order because the order did not preclude him from calling Beers' employer and that when he did so, he did not act with wrongful intent. After careful review, we affirm.

We glean the following facts from the certified record. Beers and Fricke were in a romantic relationship and had a newborn daughter together. Beers filed a PFA petition against Fricke on the morning of August 13, 2025. Beers alleged that an incident of abuse occurred the previous evening. That same day, the trial court granted a temporary PFA order and scheduled a PFA hearing for August 18, 2025.

At the hearing Beers testified that on August 12, 2025, with their newborn daughter in the vehicle, Fricke recklessly pulled their vehicle over, threatened to hit Beers, and aggressively put his hand on her leg because he was upset that Beers communicated with another man while he was incarcerated. *See* N.T., 8/18/25, at 4-7. He told her, "you don't know who you're fucking with, and I will get the baby from you." *Id.* at 7. When Beers tried to call the police, Fricke took her phone. *See id.* at 6. She testified that she acted like nothing was wrong until she could get away from him. *See id.* The next day, when Beers was at work, she called him and broke up with him. *See id.* Additionally, Beers stated that she feared Fricke. *See id.* at 7.

After the temporary PFA was served, Fricke called Children and Youth Services on Beers and called her job. *See id.* at 7. Regarding her job, Beers testified

Q: And you said he threatened your job?

A: With false accusations, yes.

Q: How do you know that?

A: Because my job, I got called into a meeting and him and his wife or ex-wife, . . . called my job as well. They left their names six to eight times saying the same things. Now they have my — my job wants safety from him as well.

Q: And you're looking for an order of protection that prohibits him from having contact from you?

A: And my job, yes.

*Id.* at 7-8.[1]

Based on the testimony, the trial court issued a final PFA order for a period of six months. The order stated:

> [Ficke] shall not abuse, harass, stalk, threaten, or attempt or threaten to use physical force against any of the above persons in any place where they might be found.
>
> [Fricke] is prohibited from having ANY CONTACT with [Beers], or any other person protected under this order **either directly or indirectly, at any location, including but not limited to any contact at [Beers'] or other protected party's school, business, or place of employment**.
>
> NO CONTACT EXCEPT CONTACT NECESSARY TO EFFECTUATE CUSTODY OF THE PARTIES' MINOR CHILD (REN). IF THE PARTIES ARE UNABLE TO AGREE ON CUSTODY, EITHER PARTY MAY FILE A CUSTODY COMPLAINT WITH THIS COURT.
>
> [Fricke] shall not contact [Beers], or any other person protected under this order, **by telephone or by any other means, including third persons**.

PFA Order, 8/18/25 (emphases added).

The next day Beers filed an affidavit with the Monroe County District Attorney's Office alleging that Fricke violated the PFA order that morning by calling her employer and "threatening them to fire me or he was going to get them shut down[.]" Contempt Petition Affidavit, 8/19/25. Based on the affidavit, on August 22, 2025, the Commonwealth filed a contempt petition against Fricke.

---

[1] In his testimony, Fricke denied the allegations, said that he had not seen Beers since August 5th, but admitted to contacting her employer. *See* N.T., 8/18/25, at 16-21.

A contempt hearing was held on September 15, 2025. The sole witness was Dr. Ngozi Onuoha, the director of nursing for Goodwill Healthcare Incorporated, where Beers worked as a home healthcare nurse. **See** N.T., 9/15/25, at 4. Dr. Onuoha testified that Fricke called her office at 6:40 a.m. and 8:37 a.m. on August 12, 2025, to complain that Beers was using drugs. **See id.** at 4-5. At that time, Dr. Onuoha informed Fricke that she "heard what [he] said[.]" **Id.** at 6. Fricke again called at 10:37 a.m. on August 19, 2025, and spoke with Dr. Onuoha.[2] **See id.** at 6-7. During this call, Fricke told Dr. Onuoha that "[i]f you don't do anything, I will report you and I [will] shut you down." **Id.** at 7. Dr. Onuoha responded, "[s]ir, I'm taking this as a threat and from now on I will record your conversation[,]" after which Fricke hung up. **See id.** at 6. During their conversation, Fricke never directly asked Dr. Onuoha to relay a message to Beers. **See id.** at 8.

After hearing argument, the court explained:

THE COURT: Yeah. I think that the—and, I agree, because it was pre the temporary order, that the other phone calls were made. However, the continuing nature after the entry—I don't know any other definition of harassment than calling someone and threatening to shut them down if a certain person is not fired. It puts the plaintiff's job in jeopardy through her employer, which was, it appears, the intent. And that is, by definition, harassment.

. . . .

THE COURT: It's also harassment of the employee. . . .

---

[2] Fricke also called at 10:00 a.m., 1:23 p.m., and 2:54 p.m. on August 19, 2025, but it appears those calls went unanswered. **See** N.T., 9/15/25, at 7.

N.T., 9/15/25, at 9. Therefore, the trial court found Fricke in willful contempt of the final PFA order and sentenced him to pay a fine of $1,000 and the costs of the proceedings, and extended the final PFA order to February 18, 2029. *See id.* at 9-10.

Fricke timely appealed. Both Fricke and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.[3] *See* Pa.R.A.P. 1925(a)-(b).

Fricke raises the following issue for our review.

> Whether there was insufficient evidence to find [Fricke] in indirect criminal contempt of the protection from abuse order because the order was not sufficiently clear as to whether [Fricke's] conduct would violate it and, moreover, where [Fricke] did not commit an act to violate the order, where the evidence merely showed [Fricke] spoke to the plaintiff's employer but did not ask the employer to relay any messages and never had any contact with the plaintiff?

Appellant's Brief, at 5.

"When reviewing a contempt conviction, much reliance is given to the discretion of the trial judge." *Commonwealth v. Williams*, 314 A.3d 910, 912 (Pa. Super. 2024) (citation omitted). Our review is limited to "whether the facts support the trial court's decision." *Commonwealth v. Felder*, 176 A.3d 331, 333 (Pa. Super. 2017) (citation omitted). "Reversal of a finding of

---

[3] The Honorable C. Daniel Higgins Jr. wrote a one page statement referring this Court to the reasons stated on the record by the Honorable Margherita Patti-Worthington at the September 15, 2025 contempt hearing. *See* 1925(a) Statement, 11/4/25.

contempt is permissible only to correct an abuse of the trial court's discretion." **Williams**, 314 A.3d at 912 (citation omitted).

"[T]he purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." **Felder**, 176 A.3d at 334 (citation omitted). "Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order." **Id.** (citation omitted) "A charge of indirect criminal contempt consists of a claim that a violation of an order occurred outside the presence of the court." **Id.** (citation omitted).

> To establish indirect criminal contempt, the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

**Commonwealth v. Lambert**, 147 A.3d 1221, 1226 (Pa. Super. 2016) (citation omitted).

Fricke asserts that there was insufficient evidence because the order was not sufficiently definite, clear, and specific and he did not act with wrongful intent when he contacted Beers' employer.

We first address whether the order was sufficiently definite, clear, and specific to prohibit Fricke's conduct. Fricke argues that the order did not explicitly prohibit him from reporting Beers' alleged conduct to her employer. **See** Appellant's Brief, at 14-15. In support of his argument, Fricke argues that

the instant case is analogous to, and controlled by, **Commonwealth v. Baker**, 766 A.2d 328 (Pa. 2001). **See id.** at 16-20. He asserts that "[j]ust like in **Baker**, there was no way for [him] to distinguish whether the order meant it was to prevent harassment of [Beers] in person or whether it meant it was to prevent 'harassment' of [Beers] by reporting her misconduct to third parties." **Id.** at 19. The Commonwealth argues that the order clearly prohibited Fricke from contacting Beers "by using [Beers'] employer as an intermediate narrator of [Fricke's] complaints." Appellee's Brief, at 11.[4]

The instant case is clearly distinguishable and not controlled by **Baker**. In that case, Baker was in prison when served the PFA order, which prohibited him "from abusing, harassing, threatening and stalking [the victim] in any place where she might be found," where two deputies overheard Baker say "I'm going to kill this bitch." **Baker**, 766 A.2d at 329-30. Based on this statement, he was convicted of indirect criminal contempt for violating the PFA order. **See id.** at 330. Our Supreme Court vacated the judgment of sentence. The Court reasoned that the PFA order did not clearly and specifically preclude Baker's conduct because "whether the order prohibited a threatening statement which merely referred to the plaintiff or whether such a statement had to be made in the plaintiff's presence or in some manner to

_____

[4] Because the charges were filed under the civil docket number, Beers is listed as the appellee in the case caption. However, the Commonwealth, who prosecuted the case, filed the appellee brief.

subject her to fear is uncertain." **Id.** at 332 (brackets omitted) (quoting **Commonwealth v. Baker**, 722 A.2d 718, 722 (Pa. Super. 1998) (*en banc*)).

This case is distinguishable. As stated above, in **Baker**, there was nothing to suggest that Baker was prohibited from making threatening statements about the victim that merely referred to her or whether the statement had to be made in her presence, placing her in fear. Here, the PFA order clearly prohibited Fricke from communicating with Beers through her employer. The PFA order prohibited Fricke from "harass[ing]" Beers, having any direct or indirect contact with her, and contacting her by telephone, including via her employer. **See** PFA Order, 8/18/25. In light of this unambiguous language, Fricke's claim that it was unclear to him that he was prohibited from repeatedly calling Beers' employer to make disparaging statements about her that could result in her loss of employment, and threatening the company if it did not do so, is disingenuous. In fact, Beers testified at the August 12th hearing, that based on Fricke's initial phone call, she had to address the matter with her employer and that she wished Fricke stopped contacting her employer. **See** N.T., 8/18/25, at 7-8. Therefore, Fricke's argument that the PFA order was insufficiently definite, clear, and specific is without merit.

In his second argument, Fricke asserts that there was insufficient evidence that he acted with wrongful intent when he contacted Beers' employer. He argues that his conduct must be viewed within the important

public policy context of preventing the use of illegal drugs in the workplace, and when viewed through this lens, his intent was not wrongful but in fact was benevolent in the interest of public safety. ***See*** Appellant's Brief, at 23-29. The Commonwealth argues that there was sufficient evidence that Fricke acted with wrongful intent because Fricke called Beers' employer with the intent to convey a message to her through a third party and he was not merely reporting an employee's misconduct but rather "demand[ed] the employer 'do something,' i.e., fire [Beers], and to threaten the employer that if she did not do so, [Fricke] would have the business 'shut down.'" Appellee's Brief, at 17-18. We agree with the Commonwealth.

The evidence established that Fricke had already reported the alleged misconduct but still repeatedly called Beers' employer, he was aware Beers' employer already addressed the matter with her, and he made threatening statements to Dr. Onuoha if further action was not taken against Beers. Since he had already informed Beers' employer of his allegations, any further contact would not serve to inform them of an alleged instance of misconduct. Further, his threatening statements demanding that Dr. Onuoha "do something" revealed his true intent: to use his allegations as a means of indirectly communicating with Beers and to harass Beers by causing her to repeatedly respond to the allegations after her employer had already addressed the matter with her. Such actions were clearly prohibited by the

PFA order, and supported the trial court's finding that Fricke acted with wrongful intent. Therefore, Fricke is not entitled to relief.

Accordingly, for the foregoing reasons, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/1/2026